UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEL MONTE FRESH PRODUCE )
COMPANY, )
  241 Sevilla Avenue, Coral Gables, FL )
33134 and )
)
DEL MONTE FOODS (U.A.E.) FZE, )
  Office 218, Lob 15 )
  Jebel Ali Free Zone, )
  Dubai, United Arab Emirates, )     C.A. No. _____
)
       Plaintiffs, )
)
  vs. )
)
UNITED STATES OF AMERICA, )
  c/o Office of the United )
  States Attorney for the )
  District of Columbia, )
  555 4th Street, N.W., )
  Washington, D.C. 20530, )
)
UNITED STATES DEPARTMENT OF )
THE TREASURY, )
  1500 Pennsylvania Avenue, NW, )
  Washington, DC  20220, and )
)
OFFICE OF FOREIGN ASSETS )
CONTROL, )
  United States Department of the )
  Treasury, 1500 Pennsylvania Avenue, )
  NW,  Washington, DC  20220, )
)
      Defendants. )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE bring this action to compel the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") to issue an overdue export license authorizing shipments of food to Iran. The Trade Sanctions Reform and Export Enhancement Act of 2000 ("TSRA") – which generally prohibits food embargoes against Iran – requires OFAC to issue export licenses authorizing shipments of food to Iran unless the proposed recipient of the food is a terrorist entity. Under the regulatory regime established by TSRA and its implementing regulations, OFAC can only deny the license on anti-terrorism grounds under two conditions: (1) if the proposed recipient of the food is designated as a terrorist entity on either of two government terrorist lists (the lists of Specially Designated Terrorists and Foreign Terrorist Organizations); or (2) if OFAC refers the application to another agency for review and the other agency objects to the license, on anti-terrorism grounds, within nine business days. In this case, the proposed recipients of the food are not listed on either of the two government terrorist lists. In addition, on information and belief, no other agency objected to the license within nine business days – or at any later time – and it has now been more than ninety calendar days since OFAC referred the matter for inter-agency review. Under these circumstances, OFAC has a mandatory ministerial duty to issue the license. The agency's failure to do so threatens Plaintiffs with substantial irreparable harm, including lost sales, profits, and market share, and loss of reputation as a reliable and timely supplier. Plaintiffs accordingly seek the Court's intervention as set forth below.

## Jurisdiction and Venue

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331,

1337 and 1361, to provide remedies set forth in 5 U.S.C. § 706 and 28 U.S.C. § 2201.

2.      Venue is proper in this District under 28 U.S.C. § 1391(e).

## Parties

3.      Plaintiff Del Monte Fresh Produce Company is a Delaware corporation

with its principal place of business at 241 Sevilla Avenue, Coral Gables, Florida.

Del Monte Fresh Produce Company is one of the world's leading vertically

integrated producers, marketers and distributors of high-quality fresh and fresh-cut

fruit and vegetables.  Del Monte Fresh Produce Company facilitates sales of

produce by its foreign affiliates to persons and entities in other countries. One of

those foreign affiliates is Plaintiff Del Monte Foods (U.A.E.) FZE, which sells food

products in the Persian Gulf region.  Both Plaintiffs are referred to below

collectively as "Del Monte."

4.      Defendant United States Department of the Treasury is the federal

agency that administers the licensing program that is at issue in this case, through

Defendant OFAC.  Defendant United States of America is named as a defendant

pursuant to 5 U.S.C. §§ 702-703, because this is an action for judicial review of

agency actions and inactions that have affected Plaintiffs adversely.

## The Statutory and Regulatory Scheme

5.      The Trade Sanctions Reform and Export Enhancement Act of 2000

("TSRA"), 22 U.S.C. §§ 7201 et seq., sharply limits the President's ability to restrict

exports of food products as a means of imposing economic sanctions on other countries. TSRA provides that, except in circumstances not relevant here, the President may not impose a "unilateral agricultural sanction" against a foreign country or foreign entity. Id. § 7202(a). In general, TSRA defines a "unilateral agricultural sanction" as "any prohibition, restriction, or condition on carrying out an agricultural program . . . for reason of foreign policy or national security." Id. § 7201(6). Under TSRA, an "agricultural program" includes "any commercial export sale of agricultural commodities." Id. § 7201(2)(E). "Agricultural commodities," in turn, include any food, feed, fiber, or livestock. Id. § 7201(1); 7 U.S.C. § 5602(1).

6.     TSRA does, however, authorize the United States Government to regulate food exports to countries that the United States Department of State has determined have repeatedly provided support for acts of international terrorism. 22 U.S.C. § 7205(a)(1). Under TSRA, if the Department of State has determined that a particular country has repeatedly provided support for acts of international terrorism, a United States exporter may not ship food products to that country without applying for and receiving a one-year license. Id.

7.     The Department of State has determined that Iran has repeatedly provided support for acts of international terrorism. Accordingly, TSRA requires that exports of food products to Iran must be authorized through the one-year license described above.

8.     In enacting TSRA, Congress intended that the licensing program would be administered under expedited procedures, to ensure that bureaucratic

- 3 -

delays in licensing would not cause <u>de facto</u> restrictions of food shipments; such restrictions would undermine the congressional purpose of preventing economic sanctions based on food products.

9.    To prevent bureaucratic delays in licensing, Congress intended that appropriate licenses would be renewed for additional one-year terms without a gap of time between the expiration date of the original license and issuance of the renewal license; such a gap would interrupt shipments of food products, contrary to the congressional purpose.  Because the statutory term for a license is only one year, it is essential to the statutory scheme that expedited procedures ensure prompt renewal of licenses within a small fraction of the one-year license period.

10.    TSRA requires the United States Government to adopt procedures to deny applications for licenses to ship food products to terrorist entities in countries, such as Iran, that have repeatedly provided support for acts of international terrorism.  22 U.S.C. § 7205(a)(1).

11.    However, TSRA expressly circumscribes the government's authority to deny licenses, by mandating that the government cannot impose licensing restrictions, in the name of anti-terrorism, that are more restrictive than the Commerce Department does, in administering its independent export control licensing scheme.  22 U.S.C. § 7205(a)(1).

12.    There are two circumstances under which the Commerce Department's licensing restrictions would bar shipments of agricultural commodities on antiterrorism grounds.  <u>First</u>, the Commerce Department regulations contain an

express restriction that there can be "[n]o export or reexport to any individual or entity designated as a Specially Designated Terrorist or Foreign Terrorist Organization." 15 C.F.R. § 740.18(b)(1). These designations are formal, publicly available lists of individuals and entities that that the government has determined promote international terrorism.

13.     Second, the Commerce Department regulations expressly prevent shipments of agricultural commodities if another agency objects on the ground that the recipient "may promote international terrorism," as long as the objection is lodged within nine business days after referral of the matter from the Commerce Department. 15 C.F.R. § 740.18(c)(4). If no agency objects within that nine-day period, the Commerce Department's antiterrorism review is complete and such shipments are authorized to proceed, as a matter of law. Id.

14.     By cross-referencing the Commerce Department procedures in the text of TSRA, Congress limited TSRA license denials, on grounds of anti-terrorism, to the two situations described above, in which (1) a license would authorize a shipment to an entity on the lists of Specially Designated Terrorists or Foreign Terrorist Organizations; or (2) an agency other than the licensing agency determines – within nine business days after being referred the matter – that a license would authorize a shipment to an entity that may promote international terrorism. Otherwise the license must be approved, as a matter of law. Antiterrorism restrictions on other grounds, for other individuals or entities, or under other time frames would be "more restrictive than license exceptions

administered by the Department of Commerce," contrary to the mandate of TSRA. 22 U.S.C. § 7205(a)(1).

## OFAC's Procedures

15.    Under TSRA, defendant OFAC has established procedures governing licenses for food shipments to Iran and administers the licensing program at issue. 66 Fed. Reg. 36,683 (July 12, 2001).

16.    Under OFAC's procedures, a license application must include identifying information regarding the applicant, the parties to the transaction, and the product to be exported (including a statement that the product is not included on the Commerce Department's Commerce Control List).

17.    If an application does not include all of the information required by OFAC's procedures, OFAC considers the application incomplete and returns it to the submitter without action and without prejudice.

18.    If the application is complete, OFAC refers it for review by one or more other agencies.  Although the regulations do not expressly refer to the other agencies responsible for performing this review, on information and belief, the pertinent agency for food export licenses is the State Department, and its mission is to perform an anti-terrorism screening.

19.    In the preamble to the regulations, OFAC also announced deadlines for its licensing process that were in material respects the same as those imposed by the Commerce Department in its licensing process, thereby fulfilling the statutory mandate to adopt licensing requirements no more restrictive than Commerce

Department requirements. 22 U.S.C. § 7205(a)(1). Under these deadlines, OFAC is required to issue a license within nine business days after it refers the application for review by other agencies, if the other agencies lodge no objection within that nine business-day period.

20.    Although OFAC has indicated that it may have difficulty complying with the nine business-day deadline described above, it has not withdrawn that deadline, which is binding on the agency. Furthermore, OFAC has no statutory authority to establish a longer deadline, for to do so would be to impose licensing requirements more restrictive on the exporter than the Commerce Department does, in violation of TSRA. 22 U.S.C. § 7205(a)(1).

## Del Monte's License Application

21.    On August 8, 2007, Del Monte submitted a license application to OFAC, seeking authorization for three of Del Monte's foreign affiliates to ship 91 listed food products to ten listed entities in Iran. The license application contained all of the information specified in OFAC's regulations. See 31 C.F.R. § 560.530(c). Because the license application was complete, OFAC sent it to the State Department for antiterrorism review, on August 17, 2007.

22.    None of the ten entities listed in Del Monte's license application, as proposed recipients of food, are listed on either of the two terrorist lists identified in the Commerce Department regulations (i.e., the list of Specially Designated Terrorists and the list of Foreign Terrorist Organizations). Indeed, none of the ten

entities in Del Monte's license application is listed on any other public government list of terrorist entities.

23.    On information and belief, OFAC did not receive a response from the State Department within OFAC's deadline of nine business days, which expired on August 30, 2007.  OFAC did not issue the license at that point, even though the agency's procedures and TSRA required the license to be issued once the deadline was reached.

24.    On September 13, 2007 – two weeks after the nine business day deadline expired – the State Department did respond to OFAC's referral of the license application.  On information and belief, the State Department's response did not raise an objection to the license.

25.    OFAC has taken no action on Del Monte's application, even though more than 75 calendar days have passed since the State Department's response, and ninety calendar days have passed since the nine business-day deadline lapsed.

26.    Because Del Monte has satisfied all statutory and regulatory prerequisites for issuance of the license, OFAC has a mandatory legal duty to issue the license.  The required issuance of the license is a purely ministerial function; OFAC has no legal authority or requirement to make any further determination, decision or finding with respect to the license.

## The Harm Caused by OFAC's Failure To Issue the License

27.    An actual and substantial controversy exists between Del Monte and Defendants concerning OFAC's failure to issue a license authorizing shipment of food products to Iran.

28.    OFAC's failure to issue the license threatens Del Monte with imminent irreparable harm in the form of lost sales, profits and market share that would otherwise be generated from sales of food products in Iran.  OFAC's failure to issue the license also threatens to injure Del Monte's reputation as a reliable and timely supplier.

### Count I (Agency Action Unlawfully Withheld) – Failure to Issue License

29.    Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 28 above.

30.    OFAC's failure to issue the license is an agency action unlawfully withheld within the meaning of 5 U.S.C. § 706(1), because OFAC violated a mandatory legal duty to issue the requested license as a ministerial act, given that (1) the requested license would not authorize a food shipment to an entity on the lists of Specially Designated Terrorists or Foreign Terrorist Organizations; and (2) the State Department did not determine – within nine business days after being referred the matter – that the license would authorize a shipment to an entity that may promote international terrorism.

31.    OFAC's failure to issue the license is an agency action unlawfully withheld within the meaning of 5 U.S.C. § 706(1), because the failure to issue the

license under the circumstances described above is a prohibition, restriction or condition constituting a unilateral agricultural sanction in violation of TSRA.

32.    Under 5 U.S.C. § 706(1), this Court should compel the agency action unlawfully withheld by requiring issuance of the license.

33.    Under 28 U.S.C. § 2201, this Court should declare that OFAC's failure to issue the license is unlawful.

### Count II (Agency Action Unlawfully Withheld) — Failure to Issue Reports

34.    Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 28 above.

35.    TSRA requires OFAC to submit quarterly reports to Congress on any licensing activities.  22 U.S.C. § 7205(b).  In addition, every two years, OFAC must submit a report to Congress specifying the number and types of licenses applied for and approved; disclosing the average amount of time for license approvals; describing the effectiveness of applicable licensing procedures; and describing public comments on the licensing process solicited by the agency.  Id. § 7205(c).

36.    OFAC has not met the statutory deadlines for these reports.  The most recent quarterly report posted on OFAC's website covers the period from January through March 2006.  The most recent biennial report covers the period from October 2002 through September 2004.

37.    If OFAC had complied with its statutory obligation to issue these reports, Del Monte could have had notice of the extent to which OFAC has failed to comply with its licensing deadlines.  If Del Monte had had such notice, it could have

taken the magnitude of the agency's delays into account in determining how early to apply for a license, thereby attempting to minimize the disruption to its business operations of the kind that gave rise to this suit.  OFAC's failure to issue the reports required by TSRA has injured Del Monte, by obscuring the actual amount of time the agency takes to issue licenses, thereby preventing Del Monte from taking action to attempt to minimize the harm from the agency's delays.

38.   OFAC's failure to issue the reports required by statute is an agency action unlawfully withheld within the meaning of 5 U.S.C. § 706(1).

39.   Under 5 U.S.C. § 706(1), this Court should compel the agency action unlawfully withheld by requiring OFAC to issue the reports.

40.   Under 28 U.S.C. § 2201, this Court should declare that OFAC's failure to issue the reports is unlawful.

## Count III (Agency Action Unreasonably Delayed) — Failure to Issue License

41.   Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 28 above.

42.   OFAC's failure to issue the license is an agency action unreasonably delayed within the meaning of 5 U.S.C. § 706(1), because OFAC failed to issue the requested license within a reasonable time period, including within the time frame contemplated by TSRA.

43.   Under 5 U.S.C. § 706(1), this Court should compel the agency action unreasonably delayed by requiring issuance of the license.

44.    Under 28 U.S.C. § 2201, this Court should declare that OFAC's failure to issue the license is unlawful.

### Count IV (Agency Action Unreasonably Delayed) — Failure to Issue Reports

45.    Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 28 and 35-37 above.

46.    OFAC's failure to issue the biennial and quarterly reports required by TSRA is an agency action unreasonably delayed within the meaning of 5 U.S.C. § 706(1), because OFAC failed to issue the reports within a reasonable time period, including within the time frame contemplated by TSRA.

47.    Under 5 U.S.C. § 706(1), this Court should compel the agency action unreasonably delayed by requiring issuance of the reports.

48.    Under 28 U.S.C. § 2201, this Court should declare that OFAC's failure to issue the reports is unlawful.

### Prayer for Relief

Plaintiffs respectfully request the Court to grant the following relief:

I.    Issue an injunction compelling OFAC to:

    (a)  issue a license in response to Del Monte's August 8, 2007, application; and

    (b)  issue the biennial and quarterly reports required by TSRA;

II.   Issue a declaratory judgment declaring that OFAC has

    (a)  violated its mandatory legal duty to issue the requested license; and

(b) violated its mandatory legal duty to issue the biennial and

quarterly reports required by TSRA; and

III.   Award such other relief as this Court deems just and proper.

Respectfully submitted,

Daniel G. Jarcho (D.C. Bar No. 391837)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

Myron Paul Barlow (D.C. Bar No. 462886)
BARLOW AND ASSOCIATES, PLLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.  20015
(202) 895-1714

Attorneys for Plaintiffs
Del Monte Fresh Produce Company and
Dated:      November 28, 2007        Del Monte Foods (U.A.E.) FZE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEL MONTE FRESH PRODUCE
COMPANY,
  241 Sevilla Avenue, Coral Gables, FL
33134 and

DEL MONTE FOODS (U.A.E.) FZE,
  Office 218, Lob 15
  Jebel Ali Free Zone
  Dubai, United Arab Emirates,

      Plaintiffs,

  vs.

UNITED STATES OF AMERICA,
  c/o Office of the United
  States Attorney for the
  District of Columbia,
  555 4th Street, N.W.,
  Washington, D.C. 20530,

UNITED STATES DEPARTMENT OF
THE TREASURY,
  1500 Pennsylvania Avenue, NW,
  Washington, DC  20220, and

OFFICE OF FOREIGN ASSETS
CONTROL,
  United States Department of the
  Treasury, 1500 Pennsylvania Avenue,
  NW,  Washington, DC  20220,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. _____

**CERTIFICATE UNDER LCVR 7.1**

I, the undersigned, counsel of record for Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE which have any outstanding securities in the hands of the public:  Fresh Del Monte Produce, Inc.

These representations are made in order that judges of this court may determine the need for recusal.

Respectfully submitted,

Daniel G. Jarcho (D.C. Bar No. 391837)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

Myron Paul Barlow (D.C. Bar No. 462886)
BARLOW AND ASSOCIATES, PLLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.  20015
(202) 895-1714

Attorneys for Plaintiffs
Del Monte Fresh Produce Company and
Del Monte Foods (U.A.E.) FZE

Dated:        November 28, 2007

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE | The United States of America, United States Department of the Treasury, and Office of Foreign Assets Control |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Daniel G. Jarcho<br>McKenna Long & Aldridge LLP<br>1900 K Street, NW<br>Washington, DC  20006<br>(202) 496-7500 | Office of the United States Attorney for the District of Columbia<br>555 4th Street, NW<br>Washington, DC  20530<br>(202) 514-7566 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government Plaintiff

O  3 Federal Question (U.S. Government Not a Party)

⦿  2 U.S. Government Defendant

O  4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O  A.  Antitrust**

☐  410 Antitrust

**O  B.  Personal Injury/ Malpractice**

☐  310 Airplane
☐  315 Airplane Product Liability
☐  320 Assault, Libel & Slander
☐  330 Federal Employers Liability
☐  340 Marine
☐  345 Marine Product Liability
☐  350 Motor Vehicle
☐  355 Motor Vehicle Product Liability
☐  360 Other Personal Injury
☐  362 Medical Malpractice
☐  365 Product Liability
☐  368 Asbestos Product Liability

**O  C.  Administrative Agency Review**

☐  151 Medicare Act

**Social Security:**
☐  861 HIA (1395ff)
☐  862 Black Lung (923)
☐  863 DIWC/DIWW (405(g)
☐  864 SSID Title XVI
☐  865 RSI (405(g)

**Other Statutes**
☐  891 Agricultural Acts
☐  892 Economic Stabilization Act
☐  893 Environmental Matters
☐  894 Energy Allocation Act
☒  890 Other Statutory Actions (If Administrative Agency is Involved)

**O  D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O  E.  General Civil (Other)**     OR     **O  F.  Pro Se General Civil**

**Real Property**
☐  210 Land Condemnation
☐  220 Foreclosure
☐  230 Rent, Lease & Ejectment
☐  240 Torts to Land
☐  245 Tort Product Liability
☐  290 All Other Real Property

**Personal Property**
☐  370 Other Fraud
☐  371 Truth in Lending
☐  380 Other Personal Property Damage
☐  385 Property Damage Product Liability

**Bankruptcy**
☐  422 Appeal 28 USC 158
☐  423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐  535 Death Penalty
☐  540 Mandamus & Other
☐  550 Civil Rights
☐  555 Prison Condition

**Property Rights**
☐  820 Copyrights
☐  830 Patent
☐  840 Trademark

**Federal Tax Suits**
☐  870 Taxes (US plaintiff or defendant
☐  871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐  610 Agriculture
☐  620 Other Food & Drug
☐  625 Drug Related Seizure of Property 21 USC 881
☐  630 Liquor Laws
☐  640 RR & Truck
☐  650 Airline Regs
☐  660 Occupational Safety/Health
☐  690 Other

**Other Statutes**
☐  400 State Reapportionment
☐  430 Banks & Banking
☐  450 Commerce/ICC Rates/etc.
☐  460 Deportation

☐  470 Racketeer Influenced & Corrupt Organizations
☐  480 Consumer Credit
☐  490 Cable/Satellite TV
☐  810 Selective Service
☐  850 Securities/Commodities/ Exchange
☐  875 Customer Challenge 12 USC 3410
☐  900 Appeal of fee determination under equal access to Justice
☐  950 Constitutionality of State Statutes
☐  890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

● 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. Section 706 - action for agency action unlawfully withheld or unreasonably delayed

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____ Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 11/28/07   SIGNATURE OF ATTORNEY OF RECORD _Daniel J. Parker_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.