UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEL MONTE FRESH PRODUCE COMPANY,
  241 Sevilla Avenue, Coral Gables, FL 33134 and

DEL MONTE FOODS (U.A.E.) FZE,
  Office 218, Lob 15
  Jebel Ali Free Zone,
  Dubai, United Arab Emirates,

      Plaintiffs,

  vs.

UNITED STATES OF AMERICA,
  c/o Office of the United
  States Attorney for the
  District of Columbia,
  555 4th Street, N.W.,
  Washington, D.C. 20530,

UNITED STATES DEPARTMENT OF THE TREASURY,
  1500 Pennsylvania Avenue, NW,
  Washington, DC 20220, and

OFFICE OF FOREIGN ASSETS CONTROL,
  United States Department of the
  Treasury, 1500 Pennsylvania Avenue,
  NW, Washington, DC 20220,

      Defendants.

C.A. No. 1:07-CV-02143 (JDB)

**<u>AMENDED COMPLAINT</u>**

Plaintiffs Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE hereby allege as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1337 and 1361, to provide remedies set forth in 5 U.S.C. § 706 and 28 U.S.C. § 2201.

2. Venue is proper in this District under 28 U.S.C. § 1391(e).

## Parties

3. Plaintiff Del Monte Fresh Produce Company is a Delaware corporation with its principal place of business at 241 Sevilla Avenue, Coral Gables, Florida. Del Monte Fresh Produce Company is one of the world's leading vertically integrated producers, marketers and distributors of high-quality fresh and fresh-cut fruit and vegetables and other high-quality food products. Del Monte Fresh Produce Company facilitates sales of its food products by its foreign affiliates to persons and entities in other countries. In so doing, Del Monte Fresh Produce Company applies for licenses under the Trade Sanctions Reform and Export Enhancement Act of 2000 ("TSRA"), 22 U.S.C. §§ 7201 et seq., authorizing sales of food to Iran. Because facilitating sales to Iran is, and has been, a part of its ongoing business plan, Del Monte Fresh Produce Company has applied for numerous such licenses in the past and will continue to apply for such licenses in the future on a continuing basis.

4. One of the foreign affiliates described in the paragraph above is Plaintiff Del Monte Foods (U.A.E.) FZE, which sells food products in the Persian

Gulf region. Both Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE are referred to below collectively as "Del Monte."

5. Defendant United States Department of the Treasury is the federal agency that administers the licensing program that is at issue in this case, through Defendant OFAC. Defendant United States of America is named as a defendant pursuant to 5 U.S.C. §§ 702-703, because this is an action for judicial review of agency actions and inactions that have affected Plaintiffs adversely.

### The Statutory and Regulatory Scheme

6. TSRA sharply limits the President's ability to restrict exports of food products as a means of imposing economic sanctions on other countries. TSRA provides that, except in circumstances not relevant here, the President may not impose a "unilateral agricultural sanction" against a foreign country or foreign entity. Id. § 7202(a). In general, TSRA defines a "unilateral agricultural sanction" as "any prohibition, restriction, or condition on carrying out an agricultural program . . . for reason of foreign policy or national security." Id. § 7201(6). Under TSRA, an "agricultural program" includes "any commercial export sale of agricultural commodities." Id. § 7201(2)(E). "Agricultural commodities," in turn, include any food, feed, fiber, or livestock. Id. § 7201(1); 7 U.S.C. § 5602(1).

7. TSRA does, however, authorize the United States Government to regulate food exports to countries that the United States Department of State has determined have repeatedly provided support for acts of international terrorism. 22 U.S.C. § 7205(a)(1). Under TSRA, if the Department of State has determined that a

particular country has repeatedly provided support for acts of international terrorism, a United States exporter may not ship food products to that country without applying for and receiving a one-year license. Id.

8. The Department of State has determined that Iran has repeatedly provided support for acts of international terrorism. Accordingly, TSRA requires that exports of food products to Iran must be authorized through the one-year license described above.

9. In enacting TSRA, Congress intended that the licensing program would be administered under expedited procedures, to ensure that bureaucratic delays in licensing would not cause de facto restrictions of food shipments; such restrictions would undermine the congressional purpose of preventing economic sanctions based on food products.

10. To prevent bureaucratic delays in licensing, Congress intended that appropriate licenses would be renewed for additional one-year terms without a gap of time between the expiration date of the original license and issuance of the renewal license; such a gap would interrupt shipments of food products, contrary to the congressional purpose. Because the statutory term for a license is only one year, it is essential to the statutory scheme that expedited procedures ensure prompt renewal of licenses within a small fraction of the one-year license period.

11. TSRA requires the United States Government to adopt procedures to deny applications for licenses to ship food products to terrorist entities in countries,

such as Iran, that have repeatedly provided support for acts of international terrorism.  22 U.S.C. § 7205(a)(1).

12.     However, TSRA expressly circumscribes the government's authority to deny licenses, by mandating that the government cannot impose licensing restrictions, in the name of anti-terrorism, that are more restrictive than the Commerce Department does, in administering its independent export control licensing scheme.  22 U.S.C. § 7205(a)(1).

13.     There are two circumstances under which the Commerce Department's licensing restrictions would bar shipments of agricultural commodities on antiterrorism grounds.  <u>First</u>, the Commerce Department regulations contain an express restriction that there can be "[n]o export or reexport to any individual or entity designated as a Specially Designated Terrorist or Foreign Terrorist Organization."  15 C.F.R. § 740.18(b)(1).  These designations are formal, publicly available lists of individuals and entities that that the government has determined promote international terrorism.

14.     <u>Second</u>, the Commerce Department regulations expressly prevent shipments of agricultural commodities if another agency objects on the ground that the recipient "may promote international terrorism," as long as the objection is lodged within nine business days after referral of the matter from the Commerce Department, and within eleven business days after the Commerce Department initially records receipt of the exporter's notice of intent to invoke the licensing exception.  15 C.F.R. §§ 740.18(c)(3), (c)(4).  If no agency objects within that period,

- 4 -

the Commerce Department's antiterrorism review is complete and such shipments are authorized to proceed, as a matter of law. Id.

15.  By cross-referencing the Commerce Department procedures in the text of TSRA, Congress limited TSRA license denials, on grounds of anti-terrorism, to the two situations described above, in which (1) a license would authorize a shipment to an entity on the lists of Specially Designated Terrorists or Foreign Terrorist Organizations; or (2) an agency other than the licensing agency determines – within nine business days after being referred the matter and within eleven business days after the licensing agency initially records receipt of the license application – that a license would authorize a shipment to an entity that may promote international terrorism. Otherwise the license must be approved, as a matter of law. Antiterrorism restrictions on other grounds, for other individuals or entities, or under other time frames would be "more restrictive than license exceptions administered by the Department of Commerce," contrary to the mandate of TSRA. 22 U.S.C. § 7205(a)(1).

## OFAC's Procedures

16.  Under TSRA, defendant OFAC has established procedures governing licenses for food shipments to Iran and administers the licensing program at issue. 66 Fed. Reg. 36,683 (July 12, 2001).

17.  Under OFAC's procedures, a license application must include identifying information regarding the applicant, the parties to the transaction, and

the product to be exported (including a statement that the product is not included on the Commerce Department's Commerce Control List).

18.     If an application does not include all of the information required by OFAC's procedures, OFAC considers the application incomplete and returns it to the submitter without action and without prejudice.

19.     If the application is complete, OFAC refers it for review by one or more other agencies.  Although the regulations do not expressly refer to the other agencies responsible for performing this review, on information and belief, the pertinent agency for food export licenses is the State Department, and its mission is to perform an anti-terrorism screening.

20.     In the preamble to the regulations, OFAC also announced deadlines for its licensing process that were in material respects the same as those imposed by the Commerce Department in its licensing process, thereby fulfilling the statutory mandate to adopt licensing requirements no more restrictive than Commerce Department requirements.  22 U.S.C. § 7205(a)(1).  Under these deadlines, OFAC is required to issue a license within nine business days after it refers the application for review by other agencies, if the other agencies lodge no objection within that nine business-day period.

21.     Although OFAC has indicated that it may have difficulty complying with the nine business-day deadline described above, it has not withdrawn that deadline, which is binding on the agency.  Furthermore, OFAC has no statutory authority to establish a longer deadline, for to do so would be to impose licensing

requirements more restrictive on the exporter than the Commerce Department does, in violation of TSRA.  22 U.S.C. § 7205(a)(1).

### Del Monte's License Application

22.    On August 8, 2007, Del Monte submitted a license application to OFAC, seeking authorization for three of Del Monte's foreign affiliates to ship 91 listed food products to ten listed entities in Iran.  The license application contained all of the information specified in OFAC's regulations.  See 31 C.F.R. § 560.530(c).  Because the license application was complete, OFAC sent it to the State Department for antiterrorism review, on August 17, 2007.

23.    None of the ten entities listed in Del Monte's license application, as proposed recipients of food, are listed on either of the two terrorist lists identified in the Commerce Department regulations (i.e., the list of Specially Designated Terrorists and the list of Foreign Terrorist Organizations).  Indeed, none of the ten entities in Del Monte's license application is listed on any other public government list of terrorist entities.

24.    On information and belief, OFAC did not receive a response from the State Department within nine business days after referral of the application to the State Department.  OFAC did not issue the license at that point.

25.    On September 13, 2007, the State Department did respond to OFAC's referral of the license application.  On information and belief, the State Department's response did not raise an objection to the license.  OFAC did not issue the license at that point.

- 7 -

26. Del Monte made repeated inquiries to the OFAC "help desk," seeking information about the status of the license application. None of these inquiries yielded any information about when (or whether) the license would be issued. On November 27, 2007, Del Monte's representative called the OFAC "help desk" to inquire about the status of the license application described above, and the OFAC "help desk" stated that the license application was still pending.

27. Del Monte filed the original complaint in this case on November 28, 2007. At the time the original complaint was filed, OFAC had not issued Del Monte's license, even though more than 110 calendar days had passed since OFAC recorded receipt of the license application, more than 100 calendar days had passed since OFAC referred the license application to the State Department, and more than 75 calendar days had passed since the State Department's response.

28. Del Monte filed a preliminary injunction motion in this case on November 29, 2007. Later on November 29, 2007, the Court scheduled a status conference on the preliminary injunction motion for the following day. Shortly thereafter on November 29, 2007, OFAC issued the license that was the subject of Del Monte's application.

29. On November 29, 2007, Del Monte received the license described above. Until Del Monte received it, the license could not be relied on or used by Del Monte, and the license had no operative effect or legal force.

30. Because Del Monte had satisfied all statutory and regulatory prerequisites for issuance of the license, OFAC had a mandatory legal duty to issue

the license within nine business days after referring Del Monte's license application to the State Department, and within eleven business days after OFAC initially recorded receipt of the license application. Once this deadline was reached, the required issuance of the license was a purely ministerial function; OFAC had no legal authority or requirement to make any further determination, decision or finding with respect to the license.

31. OFAC's issuance of the license described above after the original complaint in this action was filed, and after a motion for preliminary injunction was filed, and after the Court scheduled a status conference on the motion, did not eliminate the actual and substantial controversy that exists between Del Monte and Defendants concerning the legality of OFAC's failure to issue that license within the time frames described above, and within a reasonable period of time.

32. The licensing inaction and/or action at issue in this case is in its duration too short to be fully litigated prior to its cessation or expiration. The length of time necessary to litigate the issues in this case fully is longer than the deadlines specified above, longer than the application process for the license at issue, and longer than the time necessary for the government to review a license application and issue a license.

33. Because facilitating sales of, and selling, food products to Iran is, and has been, a part of Del Monte's ongoing business plan, Del Monte will continue to apply for OFAC licenses in the future on a continuing basis. There is a reasonable

expectation that Del Monte will be subject to the same inaction and/or action by OFAC again in the future, with respect to future license applications.

### Count I (Agency Action Unlawfully Withheld)

34.     Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 33 above.

35.     OFAC's failure to issue the license described above within the deadlines described above is an agency action unlawfully withheld within the meaning of 5 U.S.C. § 706(1), because OFAC violated a mandatory legal duty to issue the requested license as a ministerial act, given that (1) the requested license would not authorize a food shipment to an entity on the lists of Specially Designated Terrorists or Foreign Terrorist Organizations; and (2) the State Department did not determine – within nine business days after being referred the matter and within eleven business days after OFAC initially recorded receipt of the license application – that the license would authorize a shipment to an entity that may promote international terrorism.

36.     OFAC's failure to issue the license described above within the deadlines described above is an agency action unlawfully withheld within the meaning of 5 U.S.C. § 706(1), because it imposed a prohibition, restriction or condition constituting a unilateral agricultural sanction in violation of TSRA.

37.     Under 28 U.S.C. § 2201, this Court should declare that OFAC's failure to issue the license described above within the deadlines described above was unlawful.

## Count II (Agency Action Unreasonably Delayed)

38. Plaintiffs hereby incorporate by reference each and every allegation set forth in paragraphs 1 through 33 above.

39. OFAC's failure to issue the license described above before November 29, 2007, and/or within the time frames described above, is an agency action unreasonably delayed within the meaning of 5 U.S.C. § 706(1), because OFAC failed to issue the requested license within a reasonable time period, including within the time frame contemplated by TSRA.

40. Under 28 U.S.C. § 2201, this Court should declare that OFAC's failure to issue the license described above within a reasonable time period was unlawful.

**Prayer for Relief**

Plaintiffs respectfully request the Court to grant the following relief:

I. Issue a declaratory judgment declaring that OFAC has:

(a) violated its mandatory legal duties by failing to issue the license described above within nine business days after referring the license application to the State Department and within eleven business days after OFAC initially recorded receipt of the license application; and/or

(b) unreasonably delayed issuing the requested license described above by failing to issue the license before November 29, 2007, and/or within the time frames described above; and

III. Award such other relief as this Court deems just and proper.

Respectfully submitted,

_____/s/_____
Daniel G. Jarcho (D.C. Bar No. 391837)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500
email: djarcho@mckennalong.co

Myron Paul Barlow (D.C. Bar No. 462886)
BARLOW AND ASSOCIATES, PLLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.  20015
(202) 895-1714
email: mbarlow@mcgrathbarlow.com

Attorneys for Plaintiffs
Del Monte Fresh Produce Company and
Del Monte Foods (U.A.E.) FZE

Dated:    January 10, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Amended Complaint to be served by first class mail, postage prepaid on the following on this 10th day of January 2008:

>Nicholas A. Oldham
>Trial Attorney
>U.S. Department of Justice
>Civil Division, Federal Programs Branch
>P.O. Box 883
>Washington, DC  20044

_____/s/_____
Daniel G. Jarcho