IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEL MONTE FRESH PRODUCE COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, *et al.*, <br><br> Defendants. | Civil Action No. 07-2143 (JDB) |

### NOTICE OF RELEASE OF QUARTERLY REPORT FOR APRIL–JUNE 2007

Defendants respectfully notify the Court that on March 11, 2008, Defendant Office of Foreign Assets Control ("OFAC") released its Quarterly Report of Licensing Activities pursuant to Section 906(b) of the Trade Sanctions Reform and Export Enhancement Act of 2000 ("TSRA"), 22 U.S.C. § 7205(b), covering activities undertaken by OFAC under Section 906(a)(1) of TSRA, 22 U.S.C. § 7205(a)(1), from April through June 2007.  A copy of this quarterly report is attached hereto.

Defendants notify the Court of this recent release because both parties discuss OFAC's TSRA quarterly reports in their briefing regarding Defendants' Motion to Dismiss (dkt. no. 16). Specifically, in their opposition to Defendants' Motion to Dismiss, Plaintiffs attach as Exhibit 1 three TSRA quarterly reports (July-September 2006, October-December 2006, and January-March 2007).  Pls.' Opp'n to Defs.' Mot. to Dismiss 11 n.3 & Ex. 1 (dkt. no. 18).  Defendants discuss the January-March 2007 TSRA quarterly report in its Reply brief.  Defs.' Reply in Supp. of Mot. to Dismiss 10 n.8 (dkt. 24).  At the time the parties filed their briefs, the January-March 2007 quarterly report was the most recent report released by OFAC.

Dated:  March 18, 2008                              Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SANDRA M. SCHRAIBMAN
(D.C. Bar No. 188599)
Assistant Branch Director
Federal Programs Branch

   /s/  Nicholas A. Oldham
Nicholas A. Oldham (D.C. Bar No. 484113)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C.  20044
Delivery Address
20 Massachusetts Ave., N.W.
Washington, D.C.  20001
Tel: (202) 514-3367
Fax: (202) 616-8470
nicholas.oldham@usdoj.gov

Attorneys for Defendant

OFFICE OF FOREIGN ASSETS CONTROL

REPORT OF LICENSING ACTIVITIES

PURSUANT TO

THE TRADE SANCTIONS REFORM AND EXPORT ENHANCEMENT ACT OF 2000

April - June 2007


I.   Overview

This report is submitted pursuant to Section 906(b) of the Trade Sanctions Reform and Export Enhancement Act of 2000 ("TSRA") and covers activities undertaken by the Treasury Department's Office of Foreign Assets Control ("OFAC") under Section 906(a)(1) of the TSRA from April through June 2007.  Under the procedures established in its TSRA-related regulations, OFAC processes license applications requesting authorization to export agricultural commodities, medicine, and medical devices to Iran and Sudan under the one-year specific licensing regime set forth in Section 906 of the TSRA.

There was a 1.2 percent increase in the number of license applications received during this reporting quarter from the prior quarter (245 for Apr.-Jun. 2007, 242 for Jan.-Mar. 2007).  OFAC was able to issue licensing determinations[1] on 25.3 percent of all the license applications received during the April – June 2007 period (compared to 45.9 percent for the Jan.-Mar. 2007 period), and issued additional determinations after the quarter ended.  The average processing time for issuing licenses decreased by 10 percent to 68.3 business days in this quarter of operation, and the average time for issuing licensing determinations increased by 13.6 percent to 84.1 business days versus 74.0 business days in the preceding quarter.

The increased complexity, volume, and length of license applications (the majority of applications pertain to the export of medical devices to Iran) coupled with the more protracted scrutiny on the part of other reviewing agencies continued to affect processing time of license applications in this quarter.  These cases are evaluated by other agencies both in terms of whether the foreign entities involved in the transaction "promote international terrorism," as required in section 906 of the TSRA, and in terms of whether the commodities at issue implicate independent export control regimes involving chemical or biological weapons or weapons of mass destruction as provided in section 904(2)(C) of the TSRA.


II.   Program Operation

From April 1 to June 30, 2007, OFAC's Licensing Division received a total of 245 license applications pursuant to Section 906(a)(1) of the TSRA.  During this period, OFAC issued licensing determinations on 62 of the 245 license applications.  One hundred fourteen (114)

---

[1] A licensing determination is defined as any action, either intermediate or final, that OFAC takes on a license application.  It may take the form of a license, a license amendment, a "return-without-action" letter, a general information letter, an interpretative letter, a denial letter, a telephone call, a fax, or an e-mail.

Office of Foreign Assets Control                                              U.S. Department of the Treasury

licenses and six license amendments[2] were issued from April through June (*See Charts 1 and 2*). On average, licenses and license amendments were issued within 68.3 business days of receipt of the application. Upon completion, 92.5 percent (111 in total)[3] of the licenses and license amendments issued were sent via e-mail in Adobe Acrobat PDF format to licensees, a service that generated very favorable comment by licensees. In addition, OFAC issued 10 "return-without-action" letters ("RWA letters") (average turnaround: 104.9 business days), and 12 denial letters (average turnaround: 225 business days – also subject to interagency review) (*See Graph 1*). The average number of business days for the Licensing Division to issue a licensing determination in response to submissions to OFAC on any license application under the TSRA regulations was 84.1 business days, an increase of 13.6 percent compared with last quarter's average of 74.0 business days. The total number of licenses/license amendments, RWA letters, and denial letters issued does not equal the number of license applications received because: (1) not all license applications received during this quarter were closed in this quarter; (2) some license applications pending from prior quarters of operation were closed in this quarter; (3) in some instances multiple applications from the same license applicant were combined into one license; and (4) a few license applications were handled via telephone, fax, or e-mail.

As in past quarters, the preponderance of license applications submitted and licenses/license amendments issued was for Iran (*See Chart 3*). Two hundred twelve (212) license applications (86.5%) were received for Iran, in contrast to 31 (12.7%) for Sudan. Likewise, 104 licenses/license amendments (86.7%) were issued for the sale of agricultural commodities, medicine, and medical devices to Iran, versus 16 (13.3%) for Sudan. In keeping with the program's trend, half of the license applications (58.0%) and nearly half of the licenses/license amendments (40.0%) percent were for the export of medical devices to Iran and Sudan. Of the 212 license applications for Iran, 66 (31.1%) were for agricultural commodities, 19 (9.0%) for medicine, and 127 (59.9%) for medical devices. Of the 104 licenses/license amendments issued for Iran, 50 (48.1%) were for agricultural commodities, 10 (9.6%) for medicine, and 44 (42.3%) for medical devices. Although fewer in number, the percentage breakdown of the 31 license applications for Sudan is analogous: 11 (35.5%) for agricultural commodities, six (19.3%) for medicine, and 14 (45.2%) for medical devices. Of the 16 licenses/license amendments issued for Sudan, nine (56.2%) were for agricultural commodities, three (18.8%) for medicine, and four (25.0%) for medical devices.

## CHART 1
### Number of License Applications and Licenses Issued by Product

|  | Agricultural Commodities | Medicine | Medical Devices | TOTAL |
|---|---|---|---|---|
| **License Applications** | 77 | 26 | 142 | 245 |
| **Licenses Issued** | 56 | 13 | 45 | 114 |
| **License Amendments Issued** | 3 | 0 | 3 | 6 |
| **Applications Denied** | 0 | 0 | 12 | 12 |

---

[2] A "license amendment" is an amendment to an existing license previously issued by OFAC. Some license amendment applications require interagency review, such as those adding an additional end-user or additional commodities to an existing license.

[3] Compared with 92.5 percent (210 in total) for Jan.-Mar. 2007.

Office of Foreign Assets Control                                U.S. Department of the Treasury

## CHART 2
### Number of License Applications and Licenses Issued by Country

|  | Iran | Sudan | TOTAL |
|---|---|---|---|
| License Applications[4,5] | 212 | 31 | 245 |
| Licenses Issued | 98 | 16 | 114 |
| License Amendments Issued | 6 | 0 | 6 |
| Applications Denied | 12 | 0 | 12 |

## CHART 3
### Number of License Applications and Licenses Issued by Country and Product

|  | Agricultural Commodities | Medicine | Medical Devices | TOTAL |
|---|---|---|---|---|
| **IRAN** | | | | |
| License Applications | 66 | 19 | 127 | 212 |
| Licenses and License Amendments Issued | 50 | 10 | 44 | 104 |
| **SUDAN** | | | | |
| License Applications | 11 | 6 | 14 | 31 |
| Licenses and License Amendments Issued | 9 | 3 | 4 | 16 |

## GRAPH 1

Average Time for Issuing Licensing Determinations (business days)



- Denial Letters: 225.0
- Licenses: 68.3
- RWA Letters: 104.9
- Overall Average: 84.1

Note: The term "licenses" includes licenses and license amendments.

---

[4] OFAC received one license application for Libya in this quarter of operation. Effective September 21, 2004, Executive Order 13357 terminated the emergency declared in Executive Order 12543 with respect to the policies and actions of the Government of Libya and revoked related Executive Orders. Accordingly, no OFAC license is required for exports to Libya. Executive Order 13357 does not, however, eliminate the need to comply with the licensing provisions of the Export Administration Regulations, 15 C.F.R. Parts 730 et seq.

[5] OFAC received one license application for Syria in this quarter of operation. On December 12, 2003, President Bush signed the Syria Accountability and Lebanese Sovereignty Restoration Act ("SAA") (Public Law 108-175). On May 11, 2004, President Bush issued Executive Order 13338 to implement §§ 5(a)(1), 5(a)(2)(A), and 5(a)(2)(D) of the SAA. Section 5(a)(1) of the SAA requires a prohibition on the export to Syria of all items on the Commerce Control List. Section 5(a)(2)(A) prohibits the export or reexport to Syria of all products of the United States, with the exception of food and medicine. The result of the implementation of §§ 5(a)(1) and 5(a)(2)(A) of the SAA is to restrict the export and reexport of all items subject to the Export Administration Regulations to Syria. The Department of Commerce's Bureau of Industry and Security is responsible for licensing exports and reexports, including food and medicine, to Syria.

Office of Foreign Assets Control                           U.S. Department of the Treasury