UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEL MONTE FRESH PRODUCE CO., et al.,

       Plaintiffs,

         v.

UNITED STATES OF AMERICA, et al.,

       Defendants.

Civil Action No.  07-2143  (JDB)

## MEMORANDUM OPINION

Plaintiffs Del Monte Fresh Produce Company and Del Monte Foods (U.A.E.) FZE (collectively "Del Monte") filed this action seeking a judgment declaring that the Office of Foreign Assets Control ("OFAC") unlawfully withheld or unreasonably delayed issuance of an export license for food shipments to Iran in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  However, Del Monte then received the license at issue on November 29, 2007.  Defendants United States, United States Department of Treasury, and OFAC have thus moved to dismiss for lack of subject matter jurisdiction on the ground that the case is moot.[1]  Because the amended complaint seeks relief only as to a single license

---

[1]  For ease of reference, the Court will refer to defendants' memorandum in support of their motion to dismiss and to their reply memorandum as "Defs.' Mem.," and "Defs.' Reply," respectively. Plaintiffs' memorandum in opposition will be referred to as "Pls.' Opp'n."

The Court observes that three declarations and/or exhibits thereto have been filed under seal because they refer to confidential business information, described by the parties as a list of plaintiffs' customers, the specific commodities purchased, and the economic injury alleged. See Joint Mot. to Place Under Seal Exhibits A and B to the Elizabeth W. Farrow Declaration at 1-2; Pls.' Mot. for Reconsideration of Mot. to Place Under Seal the Declarations of Jeffrey S. Bailey and Mohammed Abbas.  This opinion does not refer to any of the confidential business information, and thus is appropriately placed on the public docket.

application, and OFAC has already issued that particular license, the Court concludes that the

case is moot and hence will grant defendants' motion to dismiss for lack of subject matter

jurisdiction.

## BACKGROUND

Del Monte Fresh Produce Company, a global distributor of fresh fruits, vegetables and

other food products, regularly sells those items to other countries, including Iran, as part of its

ongoing business plan. Am. Compl. ¶ 3.  Such sales are subject to regulation under the Trade

Sanctions Reform and Export Enhancement Act of 2000 ("TSRA"), 22 U.S.C. §§ 7201 et seq.

The TSRA authorizes the government to regulate food exports to any country "that has been

determined by the Secretary of State to have repeatedly provided support for acts of international

terrorism." 22 U.S.C. § 7205(a)(1).  The Secretary of State has certified that the Islamic

Republic of Iran is one such country.  66 Fed. Reg. 36683, 36684 (July 12, 2001).  Therefore,

under the TSRA, exporters such as Del Monte are required to obtain authorization, in the form of

one-year licenses, for food shipments to entities in Iran. 22 U.S.C. § 7205(a)(1).

The United States Department of the Treasury administers the TSRA licensing program

through OFAC and has established regulations to govern the issuance of these licenses.  See 66

Fed. Reg. at 36,683.  The regulations do not explicitly prescribe deadlines for the issuance of

licenses, but in Del Monte's view, such deadlines are established by the TSRA provision stating

that "the requirements of such 1-year licenses shall be no more restrictive than license exceptions

administered by the Department of Commerce."  22 U.S.C. § 7205(a)(1).  The Commerce

Department regulations provide that "department or agency objections [must be received] within

nine business days of the referral" and "within 11 business days after the date" of receipt of a

license application. 15 C.F.R. § 740.18(c)(4).  Del Monte contends that the TSRA cross-

reference to Commerce Department procedures thereby establishes the nine- and eleven- day periods as mandatory deadlines for the issuance of OFAC licenses. Am. Compl. ¶ 15. However, OFAC disputes that the "no more restrictive" provision of the TSRA indirectly imposes a statutory or regulatory deadline for the issuance of licenses. See Defs.' Mem. at 6, 8 n.6.

On August 8, 2007, Del Monte submitted a license application to OFAC requesting authorization to ship food products to customers in Iran. Am. Compl. ¶ 22. Soon thereafter, on August 17, 2007, the application was sent to the State Department for review. Id. It was returned without objection to OFAC on September 13, 2007. Id. ¶ 25. On November 23, 2007, OFAC officially signed the license; however, Del Monte was not notified of the approval until a week later on November 29, 2007. Declaration of Elizabeth W. Farrow ("Farrow Decl.") ¶¶ 3-4. The delay in notification resulted from "a disruption to normal office procedures due to renovations and an associated relocation of personnel responsible for the transmittal and closeout of" Del Monte's license application. Id. ¶ 5. During this confusion, OFAC failed to record that the license had been signed in its "help desk" database. Id. ¶ 6. Consequently, on November 27, 2007, a representative from Del Monte called the "help desk" to inquire about the pending license application and was incorrectly told that it had not yet been signed. Am. Compl. ¶ 26. The following day, on November 28, 2007, Del Monte filed this lawsuit seeking declaratory and injunctive relief. Original Compl. ¶¶ 29-48. Del Monte received official notification of the previous approval the next day and withdrew its claim for injunctive relief. Am. Compl. ¶ 28; Notice of Withdrawal of Application for Prelim. Inj. (filed Nov. 30, 2007). Nevertheless, Del Monte continues to urge this Court to declare that OFAC unlawfully withheld or unreasonably delayed issuance of the August 8, 2007 license.

## STANDARD OF REVIEW

Defendants move to dismiss for lack of subject matter jurisdiction on the ground that the case has become moot. Under Fed. R. Civ. P. 12(b)(1), the party seeking to invoke the jurisdiction of a federal court – plaintiffs here – bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998)); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."). Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)). However, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 625 (D.C. Cir. 1997). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3; Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). However, "the court need not accept

-4-

inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "legal conclusions cast in the form of factual allegations." Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## DISCUSSION

Article III of the Constitution requires the existence of a "Case" or "Controversy" before permitting judicial action. See DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) ("the inability of the federal judiciary to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy") (internal citation and quotation marks omitted). "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 55 (D.C. Cir. 2001); see also Southwestern Bell Tel. Co. v. FCC, 168 F.3d 1344, 1350 (D.C. Cir. 1999) ("Where an action has no continuing adverse impact and there is no effective relief that a court may grant, any request for judicial review of the action is moot.") (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)). Where only declaratory relief is requested, and events have so transpired that the controversy has ended and there is no remedy for the court to impose, a controversy is moot unless one of the exceptions to mootness applies. See Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997). There are two exceptions to the mootness doctrine -- one for actions "capable of repetition yet evading review," and a narrower one addressing the defendant's "voluntary cessation" of the offending

conduct.  See Clarke v. United States, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc).

Defendants contend that the case must be dismissed as moot because the license that is the subject of the amended complaint was issued on November 29, 2007.  See Defs.' Mem. at 5. In response, Del Monte contends that both exceptions to mootness apply and that, in evaluating the applicability of those exceptions, the Court should consider OFAC's history of delay on Del Monte's other Iranian food export licenses. See Pls.' Opp'n at 8, 11, 16.

## I.    Scope of the Pending Claims

As a threshold matter, the Court considers whether Del Monte's claim extends to an ongoing policy or practice of delay, or is limited to the delay involved in the issuance of one discrete license, for the scope of the claim necessarily affects the mootness inquiry.  See Houston v. Dep't of Hous. and Urban Dev., 24 F.3d 1421, 1429 (D.C. Cir. 1994) (explaining that mootness analysis will be altered depending on whether plaintiff has challenged an ongoing agency policy or a discrete agency action).  The allegations in the complaint, rather than the briefs, dictate what specific claims are before the court.  See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that claims raised for the first time in an opposition to a dispositive motion are not properly before the court); accord Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990); Arbitraje Casa de Cambio, S.A. v. United States Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003).  Del Monte's complaint focuses solely on the August 8, 2007 license application.  See Am. Compl. ¶¶ 22-40.  Indeed, the only license application described in the complaint is the one dated August 8, 2007.  Id. ¶¶ 22-33.  Furthermore, Counts I and II specify that the APA violations alleged are based on "OFAC's failure to issue the license described above."  Id. ¶¶ 34-40 (emphasis added).  Consistent therewith, the prayer for relief is limited to a

declaratory judgment concerning "the licence described above." Id. at 12.[2]

Del Monte diverges from the scope of its complaint by attempting, in its opposition to the motion to dismiss, to reframe the controversy as a broader potential harm from future delays in applications. Del Monte argues that the real inquiry is whether the same type of inaction is likely to happen again, in contrast to whether the specific inaction described in the complaint is likely to reoccur. Pls.' Opp'n at 9 (emphasis added).[3] This approach, however, is misguided because the amended complaint sets the parameters for the motion to dismiss and that complaint focuses exclusively on delay of the August 8, 2007 application. This Circuit has specifically held that "where plaintiffs are resisting a mootness claim . . . they must be estopped to assert a broader

---

[2] Specifically, the prayer for relief states:

> Plaintiffs respectfully request the Court to grant the following relief:
> I.    Issue a declaratory judgement declaring that OFAC has:
>     (a) violated its mandatory legal duties by failing to issue the license described above within nine business days after referring the license application to the State Department and within eleven business days after OFAC initially recorded receipt of the license application; and/or
>     (b) unreasonably delayed issuing the requested license described above by failing to issue the license before November 29, 2007, and/or within the time frames described above; and
> [II.]    Award such other relief as this Court deems just and proper.

Am. Compl. at 12.

[3] Del Monte's reliance on SEC v. Sloan, 436 U.S. 103, 109-10 (1978), and Burlington N. R.R. Co. v. Surface Transp. Bd., 75 F.3d 685, 689 (D.C. Cir. 1996), for this proposition is misplaced. These cases do not stand for the proposition that a court looks broadly at the type of agency action at issue in analyzing mootness, but instead indicate only that the factual record in each case must be examined to determine whether a mootness exception applies, particularly where the agency action is directed at fungible assets held by a plaintiff. See Sloan, 436 U.S. at 109-10 (holding that petitioner's challenge to temporary SEC suspension orders was not moot under "capable of repetition" exception because petitioner maintained ownership of other shares of the same stock, and agency conceded he might be harmed by suspension orders in the future); Burlington, 75 F.3d at 689 (holding that petitioner's claim was not moot because it still maintained other contracts likely to be subject to the same agency action and such agency action was actually pending on other contracts).

notion of their injury than the one on which they originally sought relief." <u>Clarke</u>, 915 F.2d at 703 (noting that without this limitation "[t]he opportunities for manipulation are great.").

"[I]f a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the <u>specific</u> claim fits the exception for cases that are 'capable of repetition, yet evading review.'" <u>Houston</u>, 24 F.3d at 1429 (emphasis added). For example, declaratory relief relating to the application of a "press ban" during the military invasion of Grenada was rendered moot when the ban was lifted. <u>Id.</u> at 1430 n.7 (discussing <u>Flynt v. Weinberger</u>, 762 F.2d 134, 135 (D.C. Cir. 1985)). Significantly, the court of appeals emphasized that the plaintiffs in <u>Flynt</u> sought a declaratory judgment "solely with respect to the constitutionality of the press ban in Grenada," in contrast to a more general "ongoing policy of excluding the press from military actions," and the entire case thus was moot once the specific ban was lifted. <u>Houston</u>, 24 F.3d at 1430 n.7. Del Monte has not raised a challenge to a pervasive policy in its amended complaint. Ultimately, the Court is unable to "entertain a broader set of claims" and expand the scope of the controversy beyond the discrete licensing application alleged in the amended complaint to "a general challenge to the time of OFAC's processing of Del Monte's future license applications." Defs.' Reply at 1; <u>Clarke</u> 915 F.2d at 703; <u>Am. Postal Workers Union v. United States Postal Serv.</u>, No. 06-0726, 2007 U.S. Dist. LEXIS 48608, *24-30 (D.D.C. July 6, 2007). For the mootness inquiry, then, the only relevant claims are those enumerated in the amended complaint which concern solely the August 8, 2007 application. With the scope of the claims thus established, the Court will next consider whether either exception to mootness applies.

## II.    Capable of Repetition Yet Evading Review

The "capable of repetition yet evading review" exception "applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the [alleged wrong is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same [alleged wrong] again." Spencer v. Kemma, 523 U.S. 1, 17 (1998) (internal quotation marks and citations omitted).  The alleged wrong "must be defined in terms of the precise controversy it spawns." People for the Ethical Treatment of Animals v. Gittens, 396 F.3d 416, 422 (D.C. Cir. 2005) ("PETA"); see also Clarke, 915 F.2d at 703 (explaining that probability of recurrence must be evaluated by reference to the injury upon which plaintiffs "originally sought relief").  Therefore, the focus of the analysis remains fixed on the alleged injury related to Del Monte's August 8, 2007 application.

The Court focuses on the second element, as defendants do not dispute that delay beyond the alleged nine- and eleven-day deadlines is too short to be fully litigated.  "To be capable of repetition, there must be a reasonable expectation or demonstrated probability that the complaining party will be subjected to the same action again."[4] PETA, 396 F.3d at 423; see also Isenbarger v. Farmer, 463 F. Supp. 2d 13, 23 (D.D.C. 2006).  Del Monte contends that OFAC's past delays in license issuance presage future delays and that various OFAC statements further

---

[4] Del Monte seeks discovery to obtain information concerning the likelihood of future delays in issuing licenses.  The current record clearly describes the events leading up to the license issued in response to Del Monte's August 8, 2007 application.  It also includes the undisputed licensing history of Del Monte.  Since the necessary facts are available and undisputed, discovery is unwarranted.  See, e.g., Herbert, 974 F.2d at 197 (holding that discovery is not appropriate where the court can make a jurisdiction determination based on the undisputed facts in the pleadings).

suggest a likelihood of future delays.[5]  See Pls.' Opp'n at 11-12.  But again, the amended

complaint refers only to the delay of the August 8, 2007 application.  Am. Compl. ¶ 31.

Although Del Monte's amended complaint mentions, in passing, that Del Monte "has applied for

numerous [TSRA] licenses in the past and will continue to apply for such licenses in the future,"

the relief sought focused exclusively on OFAC's handling of the August 8, 2007 license.  Id. ¶ 3;

see also id. ¶ 34-40.  The amended complaint contains no general challenge to the timing for

processing of future TSRA license applications.  Considering that OFAC has already issued the

August 8, 2007 license, it is impossible for delay of that application to reoccur.  Hence, the Court

concludes that OFAC's alleged delay on the challenged application is not "capable of repetition."

### III. Voluntary Cessation

        "[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power

to hear and determine the case, i.e., does not make the case moot."  United States v. W.T. Grant

Co., 345 U.S. 629, 632 (1953); see also Friends of the Earth v. Laidlaw Envtl. Serv., Inc., 528

U.S. 167, 189 (2000).  The "voluntary cessation" exception applies when a defendant has

voluntarily stopped the challenged activity, unless there is (1) a conclusion that "there is no

reasonable expectation . . . that the alleged violation will recur" and (2) evidence that "interim

---

        [5] Del Monte highlights the following delays.  On July 31, 2006, Del Monte submitted a license application to OFAC seeking authorization to ship food products to customers in Iran.  Declaration of Katia Gousset ("Gousset Decl.") ¶ 2.  The application was referred to the State Department for review on August 7, 2006 and returned without objection on or around September 12, 2006, but a license was not timely issued.  Id. ¶¶ 2-3.  Del Monte then filed suit against OFAC on October 27, 2006 to compel issuance of the license.  Del Monte Fresh Produce Co. v. United States, Civil Action No. 06-1844 (D.D.C.).  OFAC issued the license soon thereafter, on November 8, 2006, and Del Monte dismissed the suit without prejudice the following day.  Pls.' Opp'n at 3.  In the months thereafter, Del Monte filed four additional applications with OFAC for food shipment to Iran and received licenses one to two months following the application, allegedly in violation of the nine- and eleven-day deadlines asserted by Del Monte.  See Gousset Decl. ¶¶ 4-7 (describing the timeline for the four applications and licenses).

relief or events have completely and irrevocably eradicated the effects of the alleged violation."
Doe v. Harris, 696 F.2d 109, 111 (D.C. Cir. 1982) (citing County of Los Angeles v. Davis, 440
U.S. 625, 631 (1979)); see also Nat'l Black Police Ass'n, 108 F.3d at 349.  The "voluntary
cessation" exception prevents a defendant from "return[ing] to his old ways" by rendering a case
moot through manipulative unilateral action after the suit is filed.  W.T. Grant Co., 345 U.S. at
632.

        As a threshold matter, the act of issuing the license at issue cannot be considered a
"voluntary cessation."  Although Del Monte only learned that OFAC had granted the license after
the lawsuit was filed, the record demonstrates that the license, in fact, was signed on November
23, 2007 – six days prior to the filing of the complaint – and notification was delayed only due to
administrative confusion.  Farrow Decl. ¶¶ 3-5.  The sole post-suit action was the communication
of the decision to Del Monte on November 29, 2007.  Id. ¶¶ 4.  The timing of the delivery of
notification was a function of the office renovation and relocation, not the filing of the lawsuit.
Id. ¶¶ 3, 5.  Because the act of delivering the notification was based on reasons independent of
the litigation, the Court does not consider the issuance of the license a "voluntary cessation."  See
Wyo. Outdoor Council v. Dombeck, 148 F. Supp. 2d 1, 8 n.1 (D.D.C. 2001) ("the voluntary
cessation doctrine does not apply when the challenged activity stops for reasons unrelated to
litigation"); see also Clarke, 915 F.2d at 705 (holding that the "voluntary cessation" exception to
mootness did not apply when the expiration date of a relevant act was set well before the dispute
arose and had nothing to do with the litigation).

        Even if defendants' actions could be characterized as a voluntary cessation of conduct in
response to the lawsuit, the exception still would not apply.  The Court has already concluded

above in the "capable of repetition" inquiry that there is no "reasonable expectation" that Del

Monte will be subject to the same alleged wrong, and that conclusion applies with equal force to

the first prong of the "voluntary cessation" inquiry.  That is, considering the amended

complaint's focus on a single license application, there is no danger of recurring delay because

OFAC definitively acted by issuing the license on November 29, 2007.  Furthermore, the receipt

of the license has authorized Del Monte to ship food to customers in Iran just as Del Monte

sought in the application at issue, thereby "completely or irrevocably eradicat[ing] the effects of

the alleged violation."  See Nat'l Black Police Ass'n, 108 F.3d at 349 (holding that intervening

legislative action resolved the controversy and eliminated the residual effect of alleged previous

injury). Therefore, the "voluntary cessation" exception to the mootness doctrine has no

application here.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court will grant defendants' motion to dismiss for lack of

subject matter jurisdiction.  A separate order accompanies this memorandum opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   July 16, 2008

-12-